1   Mark L. Whitaker (*pro hac vice* application pending)
    MWhitaker@mofo.com
2   Mary Prendergast (CA BAR NO. 272737)
    MPrendergast@mofo.com
3   MORRISON & FOERSTER LLP
    2000 Pennsylvania Avenue, NW
4   Washington, District of Columbia 20006-1888
    Telephone:    (202) 887-1500
5   Facsimile:    (202) 887-0763

6   Jack W. Londen (CA BAR NO. 85776)
    JLonden@mofo.com
7   MORRISON & FOERSTER LLP
    425 Market Street
8   San Francisco, California 94105
    Telephone: (415) 268-7000
9   Facsimile: (415) 268-7522

10  Roman A. Swoopes (CA BAR NO. 274167)
    MORRISON & FOERSTER LLP
11  755 Page Mill Road
    Palo Alto, California 94304-1018
12  Telephone:    (650) 813-5600
    Facsimile:    (650) 494-0792

13
    Counsel for Plaintiff
14  TERADATA US, INC.

15

16                  UNITED STATES DISTRICT COURT

17                 NORTHERN DISTRICT OF CALIFORNIA

18

19  TERADATA US, INC,                      Case No. 3:20-cv-06127

20                      Plaintiff,
                                           **COMPLAINT FOR PATENT
21        v.                               INFRINGEMENT**

22  SAP SE, SAP AMERICA, INC., and         **DEMAND FOR JURY TRIAL**
    SAP LABS, LLC,
23
                        Defendants.
24

25

26

27

28

1     Plaintiff Teradata US, Inc. ("Teradata") complains and alleges as follows against

2     Defendants SAP SE, SAP America, Inc., and SAP Labs, LLC (collectively, "SAP").

3                              **THE NATURE OF THE ACTION**

4          1.      This is an action against SAP for its infringement of United States Patents

5     owned by Teradata.  Teradata, along with Teradata Corporation and Teradata Operations,

6     Inc. have sued SAP in a pending action in this District challenging practices by SAP that

7     constitute misappropriation of trade secrets and violate antitrust laws, *Teradata Corp., et al.*

8     *v. SAP SE et al.*, 3:18-CV-03670-WHO (JCS) (the "Trade Secret/Antitrust Action").  In that

9     case, SAP has filed counterclaims alleging that Teradata Corporation and Teradata

10    Operations, Inc. infringe five United States patents.  Responding to the counterclaims,

11    Teradata investigated the patents SAP is asserting and has shown that Teradata prior art

12    systems preceded several of the asserted SAP patents in practicing technology that SAP

13    claimed to be novel when it sought issuance of the patents.  The investigation led Teradata

14    also to identify its own five patents that are infringed by SAP, and in particular by the SAP

15    HANA product.

16         2.      Teradata's pending Trade Secret/Antitrust Action arises because SAP engaged

17    Teradata under false pretenses in a purported joint venture beginning in 2008 to gain access

18    to Teradata's valuable intellectual property.  SAP stole Teradata's trade secrets and used

19    them in a competing (though inferior) product, SAP HANA.  SAP's violation of Teradata's

20    intellectual property rights did not stop there.  In adapting SAP HANA to compete with

21    Teradata Database, SAP also created a product that infringes the following patents owned by

22    Teradata US, Inc.:

23    • United States Patent No. 6,763,357 (the '357 Patent).

24    • United States Patent No. 7,185,000 (the '000 Patent).

25    • United States Patent No. 7,904,419 (the '419 Patent).

26    • United States Patent No. 9,851,923 (the '923 Patent).

27    • United States Patent No. 9,720,623 (the '623 Patent).

28

**PARTIES**

3.      Teradata US, Inc. is a corporation organized under the laws of Delaware, with its headquarters at to 17095 Via del Campo, San Diego, California 92127.  Teradata US, Inc. is the owner of the patents being asserted in this action.  Teradata, along with its affiliates owned directly or indirectly by its parent Teradata Corporation, makes Teradata Database and other information processing products that it sells to its United States distributor, Teradata Operations, Inc.  Teradata Operations, Inc. sells Teradata products to customers.

4.      Defendant SAP SE is a European company.  Its principal place of business is located at Dietmar-Hopp-Allee 16, Walldorf, Germany, 69190.  SAP SE converted from a German "AG" corporation to an "SE" European company in 2014.

5.      Defendant SAP America, Inc. ("SAP America"), a wholly-owned subsidiary of SAP SE, is a Delaware corporation.  Its principal place of business is 3999 West Chester Pike, Newtown Square, PA 19073, and it also has a place of business located in this District, at 1999 Harrison Street, Suite 675, Oakland, CA 94612.  SAP America is responsible for sales, marketing, distribution, technical support, and customer service related to SAP HANA occurring in the United States, including throughout this District.

6.      Defendant SAP Labs, LLC ("SAP Labs"), a wholly owned subsidiary of SAP America, is a Delaware limited liability company.  SAP Labs has places of business in Palo Alto and San Francisco, California, including its Co-Innovation Lab ("COIL") facility located at 3410 Hillview Avenue, Palo Alto, CA 94304.  COIL housed a development, analysis, and testing environment for the SAP-Teradata joint venture discussed herein (known as the "Bridge Project") and featured customer demonstrations of the integrated solution jointly developed by SAP and Teradata (referred to as "Teradata Foundation").  SAP Labs conducts research, development, and engineering activities related to SAP HANA.

**JURISDICTION**

7.      This Court has subject matter jurisdiction under 28 U.S.C. 1331 and under 28 U.S.C. § 1400(b).

8.     This Court has personal jurisdiction over SAP SE, SAP America, and SAP Labs (collectively, "SAP").  This Court has personal jurisdiction over SAP SE because it has submitted to this court's jurisdiction by bringing claims of patent infringement here, and it has committed acts of patent infringement and, through its subsidiaries, has a regular and established place of business within this District.

9.     This Court has personal jurisdiction over SAP America because it has committed acts of patent infringement and has a regular and established place of business within this District.

10.    This Court has personal jurisdiction over SAP Labs because it has committed acts of patent infringement and has a regular and established place of business within this District.

## VENUE AND INTRADISTRICT ASSIGNMENT

11.    Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred or a substantial part of property that is the subject of the action is situated in this District.  Venue as to SAP SE is proper under 28 U.S.C. § 1391(c)(3) because SAP SE is not a resident in the United States.  Additionally, venue is proper under 28 U.S.C. § 1400(b) because SAP Labs and SAP America (and SAP SE, through its subsidiaries) each has a regular and established place of business in this district.

12.    This is a Patent Infringement action to be assigned on a district-wide basis pursuant to Civil Local Rule 3-2(c).

## BACKGROUND

**Teradata Is One of the World's Leading Technology Companies and a Pioneer of Enterprise Data Analysis and Warehousing.**

13.    Teradata's flagship product, and the cornerstone of all of its enterprise-analytics offerings, is Teradata Database.  Teradata Database is a massively parallel relational database management system (RDBMS) specifically designed for Enterprise Data Analytics and Warehousing (EDAW).  EDAW involves the centralized storage and

integration of vast amounts of data collected from numerous sources across an entire business enterprise in its day-to-day operations, giving the business a complete "enterprise view" of its operational activities.  In addition to data storage, EDAW is especially valuable in helping the world's largest companies (most of whom serve millions or even billions of customers and/or process millions or billions of transactions or data-generating events every day) analyze and fully understand the entirety of their business operations, including how events happening in one area of the business impact operations in other areas.  EDAW also assists these companies in making the strategic and tactical decisions, often in real-time, which allow them to operate as efficiently and profitably as possible.

14.     Teradata has been a leading provider of EDAW products for nearly 40 years.  Teradata pioneered and was the first commercial EDAW vendor to employ the highly scalable computing architecture known as "massively parallel processing" (MPP).  Teradata's MPP architecture is designed specifically for executing high volumes of complex analytical queries (tens of thousands at a time) on the massive amounts of data generated by EDAW customers.  As the term MPP suggests, Teradata's architecture accomplishes this by distributing both the data and the analytical workload across dozens, hundreds, or (in many cases) thousands of parallel processor units, and executing the analytical tasks concurrently across these parallel units.

15.     Teradata's technology grew out of research conducted at the California Institute of Technology.  After starting the company in a garage in Marina Del Rey, California, the founders obtained funding in mid-1979 and Teradata was born on July 13, 1979.  The founders chose the name "Teradata" to symbolize the ability of their flagship database to manage trillions of bytes of data, an unimaginable amount of data at that time.

16.     Teradata released the first commercial system incorporating its MPP architecture in the early 1980s and has spent the last four decades expanding and improving its technology.  In 1983, Teradata received the seminal patent on first-generation MPP design for data analytics (hardware-based parallelism; U.S. No. 4,412,285, "Multiprocessor Interconnection System and Method").  Eleven years later it also received the seminal patent

on second-generation MPP design (software-based parallelism; U.S. No. 5,640,584, "Virtual Processor Method and Apparatus for Enhancing Parallelism and Availability in Computer Systems"), technology that continues to distinguish Teradata's systems from those of its competitors today.

17.    In the 25 years since its early breakthroughs, Teradata has continued in its role as the pioneer for massively parallel analytics, developing and patenting technologies that remain the gold standard in a wide variety of technology areas.  Teradata has developed extensive intellectual property related to its database and data-analytics technologies, obtaining more than 1000 patents.

**SAP Quickly Developed and Improved HANA, SAP's Flagship Database Offering, by Misappropriating Teradata's Intellectual Property.**

18.    Teradata's Trade Secret/Antitrust Action will demonstrate that while SAP led Teradata to believe the two companies were actively partnering on a joint technology development effort called the Bridge Project, SAP also was developing its own competing database solution—SAP HANA.  In the summer of 2009, just months after the Bridge Project formally began, SAP co-founder Hasso Plattner and then-CTO Dr. Vishal Sikka announced their goal of revitalizing SAP's lackluster and outdated product offerings by developing a new, faster database architecture.  Dr. Sikka restructured SAP's engineering teams to develop and deploy SAP HANA less than a year later.

19.    On August 19, 2011, after the parties had been working on the Bridge Project for nearly three years, SAP unilaterally terminated the project.  Just days later in September 2011, SAP announced HANA for SAP BW, which combined front-end software with the back-end database engine (HANA) for the purpose of creating an EDAW solution—and entering competition with Teradata Database.

20.    The Teradata patents asserted in this action show that Teradata's innovations predated the technology claimed in patents that SAP is asserting against Teradata in the Trade Secret/Antitrust Action.  Teradata's patents also predicted and addressed problems that came to be inherent in the architecture of databases like HANA.  Accordingly, in

addition to incorporating fruits of the trade secret misappropriation that Teradata will prove in the Trade Secret/Antitrust Action, SAP HANA infringes the Teradata patents asserted here.

## COUNT I: INFRINGEMENT OF U. S. PATENT NO. 6,763,357

21.    Teradata hereby restates and re-alleges the allegations set forth in paragraphs 1 through 20 above and incorporates them by reference.

22.    A fundamental function of a relational database management system is to make, manage, and select among alternative ways of performing queries seeking data from the enterprise's database.  Teradata's '357 Patent discloses and claims, among other things, a system for storage of multi-dimensional data from a relational database management system in active cache in response to at least a portion of a query, determining whether it is possible to answer a second query by aggregating the cached data, and then answering the second query by selecting an aggregation path from a plurality of possible aggregation paths. Dependent claims of the '357 Patent describe a variety of selection criteria for aggregation paths.

23.    The innovations in the '357 Patent involving storing data for responses to queries in active cache can provide dramatic performance improvements over other ways of generating query responses from data in a database.

24.    On information and belief, SAP became aware of the '357 Patent by July 2011, when it was cited to SAP's subsidiary, Business Objects, by a patent examiner during the prosecution of United States Patent No. 8,005,818.

25.    SAP has been and is now directly infringing, contributing to infringement, and/or inducing others to infringe, the '357 Patent in this District and elsewhere in violation of 35 U.S.C. § 271 at least by making, using, selling, offering to sell, and/or importing into the United States software, or products containing such software, that practices one or more claims of the '357 Patent, including at least SAP HANA.  On information and belief, SAP has also infringed the '357 Patent by at least providing demonstrations and testing of such software.

26.    SAP has committed infringing acts without the permission, consent, authorization, or license of Teradata.

27.    SAP's infringement is literal or under the doctrine of equivalents, or both.

28.    On information and belief, SAP, in addition to its own direct infringement, is currently actively inducing and encouraging infringement of the '357 Patent, and, unless enjoined, will continue to actively induce and encourage infringement of the '357 Patent. SAP has known of the '357 Patent at least since the time of Teradata's transmittal of this Complaint to SAP. On information and belief, SAP nevertheless actively encourages others to infringe the '357 Patent such as by promoting and/or encouraging the use of the '357 Patent's active caching of query response data described below. On information and belief, SAP knowingly induces infringement by others, including resellers, retailers, and end users of SAP HANA. For example, SAP's customers and end users test and/or operate SAP HANA in the United States in accordance with SAP's instructions contained in, for instance, its user manuals, thereby also performing the claimed methods and directly infringing the asserted claims of the '357 Patent reciting such operation. These facts give rise to a reasonable inference that SAP knowingly induces others, including resellers, retailers, and end users, to directly infringe the '357 Patent, and that SAP possesses a specific intent to cause such infringement.

29.    SAP also contributes to infringement of the '357 Patent by offering to sell or selling within the United States or importing into the United States (i) SAP HANA or products that contain it, (ii) the non-staple constituent parts of such software, which are not suitable for substantial noninfringing use and which embody a material part of the invention claimed in the '357 Patent, and (iii) components of such software, which are not suitable for substantial non-infringing use and which embody a material part of the invention claimed in the '357 Patent. Such software is known by SAP to be especially made or especially adapted for use in the infringement of the '357 Patent. Specifically, on information and belief, SAP sells such software to resellers, retailers, and end users with knowledge that such software is used for infringement. End users of such software directly infringe the '357 Patent.

30.    As one example, SAP HANA infringes at least claim 1 of the '357 Patent.

31.    Independent claim 1 of the ' Patent reads as follows (claim element enumeration added for convenience):

| Claim 1 |
|---|
| 1. [pre] A method for caching multi-dimensional data sets for an on-line analytical processing (OLAP) system, comprising: |
| [a] accessing multi-dimensional data from a relational database management system (RDBMS) in order to answer at least a portion of a first query; |
| [b] storing the multi-dimensional data in an active cache; |
| [c] determining when it is possible to answer at least a portion of a second query by aggregating the multi-dimensional data stored in the cache; and |
| [d] selecting from among a plurality of aggregation paths and answering the portion of the second query by aggregating the multi-dimensional data stored in the cache using the selected aggregation path, after it has been determined that it is possible to answer the portion of the second query by aggregating the multi-dimensional data stored in the cache. |

32.    SAP's public descriptions state that SAP HANA accesses multi-dimensional data from a multi-dimensional database management system in order to answer queries.

33.    The multi-dimensional data is stored by SAP HANA in an active cache; indeed, most of the working memory of SAP HANA is in memory that corresponds with a description of "active cache" in the '357 Patent: a cache "that can not only speed queries that 'match' data in the cache, but can also answer queries that require aggregation of data in the cache."

34.    It is consistent with public information about SAP HANA to infer that the data management system determines whether the answer to at least a portion of a second query can be provided by aggregating the data stored in the active cache. Upon information and belief, SAP HANA satisfies element 1[c] of claim 1 of the '357 Patent.

35.    Public information describing SAP HANA indicates that its methods of optimizing query processing includes selection from among a plurality of aggregation paths, and selecting one aggregation path. Since, on information and belief, the data management system determines whether an answer to the second query can be provided by aggregating

1   data in the active cache, it follows that element 1[d] as well as element 1[c] of claim 1 of the

2   '357 Patent are satisfied.

3       36.    As a direct and proximate result of SAP's infringement of the '357 Patent,

4   Teradata has suffered, and will continue to suffer damages, the loss of sales and profits.

5   Teradata will suffer additional damages and irreparable harm unless SAP is enjoined from

6   further infringement.

7                **COUNT II: INFRINGEMENT OF U. S. PATENT NO. 7,185,000**

8       37.    Teradata hereby restates and re-alleges the allegations set forth in paragraphs 1

9   through 36 above and incorporates them by reference.

10      38.    Teradata's corporate focus has been to develop parallel processing—indeed,

11  massively parallel processing—that can achieve unrivalled speed and scalability in handling

12  complex queries addressed to the databases of the largest enterprises in the world.  The '000

13  Patent facilitates query optimization on parallel database systems and claims, among other

14  things, methods for determining steps of the query execution plan for a parallel database

15  system and displaying the steps in a graphical user interface.

16      39.    On information and belief, SAP became aware of the '000 Patent by July

17  2012, when it acquired ownership of United States Patent No. 7,493,304 from IBM

18  Corporation.  The '000 patent is listed in that patent as prior art cited by a patent examiner.

19      40.    SAP has been and is now directly infringing, contributing to infringement,

20  and/or inducing others to infringe, the '000 Patent in this District and elsewhere in violation

21  of 35 U.S.C. § 271 at least by making, using, selling, offering to sell, and/or importing into

22  the United States software, or products containing such software, that practices one or more

23  claims of the '000 Patent, including at least SAP HANA incorporating a feature referred to

24  as PlanViz.  On information and belief, SAP has also infringed the '000 Patent by at least

25  providing demonstrations and testing of such software.

26      41.    SAP has committed infringing acts without the permission, consent,

27  authorization, or license of Teradata.

28      42.    SAP's infringement is literal or under the doctrine of equivalents, or both.

43.     On information and belief, SAP, in addition to its own direct infringement, is currently actively inducing and encouraging infringement of the '000 Patent, and, unless enjoined, will continue to actively induce and encourage infringement of the '000 Patent. SAP has known of the '000 Patent at least since the time of Teradata's transmittal of this Complaint to SAP. On information and belief, SAP nevertheless actively encourages others to infringe the '000 Patent such as by promoting and/or encouraging the use of the features in SAP HANA incorporating PlanViz for the display of data query structure as described below. On information and belief, SAP knowingly induces infringement by others, including resellers, retailers, and end users of SAP HANA. For example, SAP's customers and end users test and/or operate SAP HANA in the United States in accordance with SAP's instructions contained in, for instance, its user manuals, thereby also performing the claimed methods and directly infringing the asserted claims of the '000 Patent reciting such operation. These facts give rise to a reasonable inference that SAP knowingly induces others, including resellers, retailers, and end users, to directly infringe the '000 Patent, and that SAP possesses a specific intent to cause such infringement.

44.     SAP also contributes to infringement of the '000 Patent by offering to sell or selling within the United States or importing into the United States (i) SAP HANA or products that contain it, (ii) the non-staple constituent parts of such software, which are not suitable for substantial noninfringing use and which embody a material part of the invention claimed in the '000 Patent, and (iii) components of such software, which are not suitable for substantial non-infringing use and which embody a material part of the invention claimed in the '000 Patent. Such software is known by SAP to be especially made or especially adapted for use in the infringement of the '000 Patent. Specifically, on information and belief, SAP sells such software to resellers, retailers, and end users with knowledge that such software is used for infringement. End users of such software directly infringe the '000 Patent.

45.     As one example, SAP HANA infringes at least claim 1 of the '000 Patent.

46.     Independent claim 1 of the '000 Patent reads as follows (claim element enumeration added for convenience):

| Claim 1 |
|---|
| [pre]  A method of presenting an execution plan for a query, comprising: |
| [a]  determining steps of the query execution plan for a parallel database system; |
| [b]  displaying the steps of the query execution plan in a graphical user interface; |
| [c]  and depicting parallel execution of steps of the query execution plan in the graphical user interface, |
| [d]  wherein depicting the parallel execution of steps comprises displaying plural elements corresponding to concurrently executing plural steps on respective processors of the parallel database system; |
| [e]  and wherein determining the steps comprises determining steps of the query execution plan for the parallel database system running in a platform having plural virtual processors to handle access to data in the parallel database system. |

47.    Public information describing SAP HANA with the feature referred to as PlanViz state that the system uses a display device to show the user a graphical view of an executed query and help the user understand the query execution in an SAP HANA database. On information and belief, SAP HANA uses parallel virtual processors.  A reasonable inference from available public information is that SAP HANA infringes claim 1 of the '000 Patent.

48.    As a direct and proximate result of SAP's infringement of the '000 Patent, Teradata has suffered, and will continue to suffer damages, the loss of sales and profits. Teradata will suffer additional damages and irreparable harm unless SAP is enjoined from further infringement.

## COUNT III: INFRINGEMENT OF U. S. PATENT NO. 7,904,419

49.    Teradata hereby restates and re-alleges the allegations set forth in paragraphs 1 through 48 above and incorporates them by reference.

50.    One of the fundamental challenges of data processing for enterprises that possess enormous volumes of data is how to manage storage.  A robust system must manage storage devices in different ways for data that is to be permanent—in that it will remain available unless it is deleted or modified at the user's request—versus data that is temporary.

1   Performance can be improved and management overhead can be reduced by storing

2   temporary data on memory devices that are volatile and will lose data if power is not

3   maintained, but retrieve data faster than permanent memory devices.  On the other hand,

4   persistence is essential for long-term storage of data.  By distinguishing the data types and

5   performing certain tasks, such as updating file management information, only on temporary

6   data, storage capacity can be used more efficiently.  Teradata's '419 patent enables and

7   claims systems and methods for using the classification of data as permanent or temporary to

8   achieve these benefits.

9       51.     SAP became aware of the '419 Patent no later than the date of Teradata's

10  transmittal of this Complaint to SAP.

11      52.     SAP has been and is now directly infringing, contributing to infringement,

12  and/or inducing others to infringe, the '419 Patent in this District and elsewhere in violation

13  of 35 U.S.C. § 271 at least by making, using, selling, offering to sell, and/or importing into

14  the United States software, or products containing such software, that practices one or more

15  claims of the '419 Patent, including at least SAP HANA.  On information and belief, SAP

16  has also infringed the '419 Patent by at least providing demonstrations and testing of such

17  software.

18      53.     SAP has committed infringing acts without the permission, consent,

19  authorization, or license of Teradata.

20      54.     SAP's infringement is literal or under the doctrine of equivalents, or both.

21      55.     On information and belief, SAP, in addition to its own direct infringement, is

22  currently actively inducing and encouraging infringement of the '419 Patent, and, unless

23  enjoined, will continue to actively induce and encourage infringement of the '419 Patent.

24  SAP has known of the '419 Patent at least since the time of Teradata's transmittal of this

25  Complaint to SAP. On information and belief, SAP nevertheless actively encourages others

26  to infringe the '419 Patent such as by promoting and/or encouraging the use of the method

27  and system for managing storage in and updating of data in persistent storage and non-

28  persistent memory, as described below. On information and belief, SAP knowingly induces

infringement by others, including resellers, retailers, and end users of SAP HANA. For example, SAP's customers and end users test and/or operate SAP HANA in the United States in accordance with SAP's instructions contained in, for instance, its user manuals, thereby also performing the claimed methods and directly infringing the asserted claims of the '419 Patent reciting such operation. These facts give rise to a reasonable inference that SAP knowingly induces others, including resellers, retailers, and end users, to directly infringe the '419 Patent, and that SAP possesses a specific intent to cause such infringement.

56.    SAP also contributes to infringement of the '419 Patent by offering to sell or selling within the United States or importing into the United States (i) SAP HANA or products that contain it, (ii) the non-staple constituent parts of such software, which are not suitable for substantial non-infringing use and which embody a material part of the invention claimed in the '419 Patent, and (iii) components of such software, which are not suitable for substantial non-infringing use and which embody a material part of the invention claimed in the '419 Patent. Such software is known by SAP to be especially made or especially adapted for use in the infringement of the '419 Patent. Specifically, on information and belief, SAP sells such software to resellers, retailers, and end users with knowledge that such software is used for infringement. End users of such software directly infringe the '419 Patent.

57.    As one example, SAP HANA infringes at least claims 1 and 2 of the '419 Patent.

58.    Independent claims 1 and 2 of the '419 Patent reads as follows (claim element enumeration added for convenience):

| Claims 1 and 2 |
|---|
| 1. [pre] A database system comprising: |
| [a] a persistent data storage device storing a first file management context and having a pool of storage elements; and |
| [b] a non-persistent memory storing a second file management context, |
| [c] the first file management context to indicate allocated permanent files in the pool of storage elements, and |

| Claims 1 and 2 |
|---|
| [d] the second file management context to indicate allocated temporary files and permanent files in the pool of storage elements. |
| 2. [pre] A method for use in a database system having a persistent storage device and a non-persistent memory, comprising: |
| [a] storing a first file management context in the persistent storage device; |
| [b] storing a second file management context in the non-persistent memory; |
| [c] updating both the first and second file management contexts to allocate a permanent file; and |
| [d] updating the second file management context without updating the first file management context if the flag indicates a temporary file. |

59.    Public information describing SAP HANA indicates that it is a database system that uses a persistent data storage apparatus that contains a configuration of managed data and uses a pool of storage elements, in which the configuration includes an indication of allocated permanent files in the pool of storage elements.  Public information describing SAP HANA indicates that it also uses a non-persistent memory apparatus that contains a configuration of managed data, in which the configuration includes an identification of allocated temporary files and permanent files in the pool of storage elements in the persistent data storage apparatus.

60.    Public information describing SAP HANA indicates that the configuration of data in the persistent data storage apparatus and the configuration of data in the non-persistent memory apparatus both are updated to allocate a permanent file; and that the configuration of data in the non-persistent memory apparatus is updated without updating the configuration of data in the persistent data storage apparatus with respect to data in what is indicated to be a temporary file.

61.    The features described in paragraphs 59 and 60 are fundamental to the "Disaster Recovery" functionality of SAP HANA.  Without an effective Disaster Recovery function, an enterprise database management system such as SAP HANA is commercially unacceptable.

62.    As a direct and proximate result of SAP's infringement of the '419 Patent, Teradata has suffered, and will continue to suffer damages, the loss of sales and profits. Teradata will suffer additional damages and irreparable harm unless SAP is enjoined from further infringement.

**COUNT IV: INFRINGEMENT OF U. S. PATENT NO. 9,851,923**

63.    Teradata hereby restates and re-alleges the allegations set forth in paragraphs 1 through 62 above and incorporates them by reference.

64.    Teradata's '923 Patent also relates to the improvement of data storage using methods and devices for volatile storage.  As explained above, volatile storage can lose data if power is disrupted and has advantages such as speed and disadvantages such as cost, and these tradeoffs must be managed actively.  Enterprise-level databases handle data that must be maintained and available, and cannot be lost or inadvertently changed, but is infrequently used.  Such a system also handles data that is very frequently used, modified, and updated. The term "temperature" has come to distinguish "cold" data of the first type from "hot" data of the second type.  Volatile storage needs to handle both types of data.  The '923 Patent claims data management techniques that use temperature-based storage management in one portion and non-temperature-based storage management in a different portion of the volatile memory.

65.    On information and belief, SAP became aware of the patent application that led to the issuance of the '923 Patent when it was cited to SAP SE by a patent examiner on August 23, 2018 during the prosecution of SAP's United States Patent No. 10,606,502.

66.    SAP has been and is now directly infringing, contributing to infringement, and/or inducing others to infringe, the '923 Patent in this District and elsewhere in violation of 35 U.S.C. § 271 at least by making, using, selling, offering to sell, and/or importing into the United States software, or products containing such software, that practices one or more claims of the '923 Patent, including at least SAP HANA.  On information and belief, SAP has also infringed the '923 Patent by at least providing demonstrations and testing of such software.

67.     SAP has committed infringing acts without the permission, consent, authorization, or license of Teradata.

68.     SAP's infringement is literal or under the doctrine of equivalents, or both.

69.     On information and belief, SAP, in addition to its own direct infringement, is currently actively inducing and encouraging infringement of the '923 Patent, and, unless enjoined, will continue to actively induce and encourage infringement of the '923 Patent. SAP has known of the '923 Patent at least since the time of Teradata's transmittal of this Complaint to SAP. On information and belief, SAP nevertheless actively encourages others to infringe the '923 Patent such as by promoting and/or encouraging the use of the data storage management features described below. On information and belief, SAP knowingly induces infringement by others, including resellers, retailers, and end users of SAP HANA. For example, SAP's customers and end users test and/or operate SAP HANA in the United States in accordance with SAP's instructions contained in, for instance, its user manuals, thereby also performing the claimed methods and directly infringing the asserted claims of the '923 Patent reciting such operation. These facts give rise to a reasonable inference that SAP knowingly induces others, including resellers, retailers, and end users, to directly infringe the '923 Patent, and that SAP possesses a specific intent to cause such infringement.

70.     SAP also contributes to infringement of the '923 Patent by offering to sell or selling within the United States or importing into the United States (i) SAP HANA or products that contain it, (ii) the non-staple constituent parts of such software, which are not suitable for substantial non-infringing use and which embody a material part of the invention claimed in the '923 Patent, and (iii) components of such software, which are not suitable for substantial non-infringing use and which embody a material part of the invention claimed in the '923 Patent. Such software is known by SAP to be especially made or especially adapted for use in the infringement of the '923 Patent. Specifically, on information and belief, SAP sells such software to resellers, retailers, and end users with knowledge that such software is used for infringement. End users of such software directly infringe the '923 Patent.

71.     As one example, SAP HANA infringes at least claim 1 of the '923 Patent.

72.     Independent claim 1 of the ' Patent reads as follows (claim element enumeration added for convenience):

| **Claim 1** |
|---|
| [pre] A method of managing data in a volatile storage, wherein the method is implemented at least partly by a device, and wherein the method comprises: |
| [a]. using a combination of a data temperature-based storage management technique and a non-temperature-based storage management technique together to manage the storage of data in the volatile storage, |
| [b]. wherein a first portion of the volatile memory is used to provide the temperature-based storage management technique and a second portion of the volatile memory is used to provide non-temperature-based storage management technique. |

73.     SAP has stated publicly that SAP HANA manages data in volatile storage by using both data temperature classifications (e.g. "hot" for frequently used data, "warm" for less frequently used data, and "cold" for the least-frequently used data) and user designations on a basis not limited to temperature to manage the storage of data within the volatile memory.

74.     According to SAP's public statements, the use of non-temperature based storage applies to other data stored in a different location in the volatile memory in which temperature-classified data are stored.

75.     Accordingly SAP HANA's tiered data storage method infringes claim 1 of the '923 Patent.

76.     As a direct and proximate result of SAP's infringement of the '923 Patent, Teradata has suffered, and will continue to suffer damages, the loss of sales and profits. Teradata will suffer additional damages and irreparable harm unless SAP is enjoined from further infringement.

### COUNT V: INFRINGEMENT OF U. S. PATENT NO. 9,720,623

77.     Teradata hereby restates and re-alleges the allegations set forth in paragraphs 1 through 76 above and incorporates them by reference.

78.     Teradata's '623 Patent is directed to another aspect of the management of data storage in a system that uses multiple storage units, as must occur for enterprises that possess

enormous volumes of data.  Although not limited to parallel data processing systems such as the Teradata Database and SAP HANA, the '623 Patent is particularly valuable for such systems.  Among other things, the '623 Patent claims methods and devices that use storage information, such as data access information, for data stored in one storage element to manage storage operations in a different storage element.  Overall system performance for large databases, is thereby substantially improved.

79.    SAP became aware of the '623 Patent no later than the date of Teradata's transmittal of this Complaint to SAP.

80.    SAP has been and is now directly infringing, contributing to infringement, and/or inducing others to infringe, the '623 Patent in this District and elsewhere in violation of 35 U.S.C. § 271 at least by making, using, selling, offering to sell, and/or importing into the United States software, or products containing such software, that practices one or more claims of the '623 Patent, including at least SAP HANA.  On information and belief, SAP has also infringed the '623 Patent by at least providing demonstrations and testing of such software.

81.    SAP has committed infringing acts without the permission, consent, authorization, or license of Teradata.

82.    SAP's infringement is literal or under the doctrine of equivalents, or both.

83.    On information and belief, SAP, in addition to its own direct infringement, is currently actively inducing and encouraging infringement of the '623 Patent, and, unless enjoined, will continue to actively induce and encourage infringement of the '623 Patent. SAP has known of the '623 Patent at least since the time of Teradata's transmittal of this Complaint to SAP. On information and belief, SAP nevertheless actively encourages others to infringe the '623 Patent such as by promoting and/or encouraging the use of dynamic tiering features to manage the locations among multiple data storage locations, corresponding to the claim elements described below. On information and belief, SAP knowingly induces infringement by others, including resellers, retailers, and end users of SAP HANA. For example, SAP's customers and end users test and/or operate SAP HANA in

the United States in accordance with SAP's instructions contained in, for instance, its user manuals, thereby also performing the claimed methods and directly infringing the asserted claims of the '623 Patent reciting such operation. These facts give rise to a reasonable inference that SAP knowingly induces others, including resellers, retailers, and end users, to directly infringe the '623 Patent, and that SAP possesses a specific intent to cause such infringement.

84.     SAP also contributes to infringement of the '623 Patent by offering to sell or selling within the United States or importing into the United States (i) SAP HANA or products that contain it, (ii) the non-staple constituent parts of such software, which are not suitable for substantial non-infringing use and which embody a material part of the invention claimed in the '623 Patent, and (iii) components of such software, which are not suitable for substantial non-infringing use and which embody a material part of the invention claimed in the '623 Patent. Such software is known by SAP to be especially made or especially adapted for use in the infringement of the '623 Patent. Specifically, on information and belief, SAP sells such software to resellers, retailers, and end users with knowledge that such software is used for infringement. End users of such software directly infringe the '623 Patent.

85.     As one example, SAP HANA infringes at least claim 1 of the '623 Patent.

86.     Independent claim 1 of the '623 Patent reads as follows (claim element enumeration added for convenience):

| Claim 1 |
| --- |
| [pre] A method of managing data in a multi-storage system that includes multiple storages for storage of the data, wherein the method is implemented at least partly by a device, and wherein the method comprises: |
| [a]. using storage information associated with storage of data in a first one of the multiple storages to manage storage of data in another one of the multiple storages of the multi-storage system; and |
| [b]. providing the storage information associated with storage of data in the first one of the multiple storage devices to the second one of the multiple storages, thereby allowing the second one of the multiple storage devices to manage storage of data in the second one of the multiple storage devices, based on the information associated with storage of data in the first one of the multiple storage devices. |

87.     SAP publicly states that the data management methods used by SAP HANA include the use of multiple types of data storage.  Among other reasons SAP provides for this is not only the differential cost of data storage hardware, but also SAP's system of license pricing based on the amount of data stored in the SAP HANA main memory.

88.     SAP's public statements also disclose that information about one of multiple storage devices — such as the available storage space in main memory — is used to manage storage of data in disk-based extended storage — a different storage device and location.  In doing so, the storage of data in disk-based extended storage manages storage based on information about the storage of data in the main memory.

89.     Accordingly, a reasonable inference from available public information is that SAP HANA infringes claim 1 of the '623 Patent.

90.     As a direct and proximate result of SAP's infringement of the '623 Patent, Teradata has suffered, and will continue to suffer damages, the loss of sales and profits. Teradata will suffer additional damages and irreparable harm unless SAP is enjoined from further infringement.

## PRAYER FOR RELIEF

WHEREFORE, Teradata respectfully requests the following relief:

a.     Judgment in Teradata's favor in all claims against SAP;

b.     An award of damages to Teradata in an amount to be proven at trial, including lost profits but in no event less than a reasonable royalty for its infringement, including pre-judgment and post-judgment interest at the maximum rate permitted by law;

c.     Factual findings supporting and enhancement of any damages awarded to Teradata by virtue of the exceptional nature of this case under 35 U.S.C. § 285;

d.     Issuance of permanent injunctive relief against SAP ; and

e.     Such other relief as the Court deems just and proper.

## JURY DEMAND

Teradata hereby demands TRIAL BY JURY of all claims and issues presented in this Second Amended Complaint so triable.

1    Dated: August 31, 2020                    Respectfully submitted,

2                                              MORRISON & FOERSTER LLP

3

4                                              By:  /s/ Jack W. Londen
                                                    Jack W. Londen
5
                                              Counsel for Plaintiff
6                                             TERADATA US, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28